# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICE WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-397-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Patrice Wilson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born March 1, 1972, and was forty-one years old at the time of the administrative hearing (Tr. 40). She has a high school education, some college, and has worked as a bill collector, claims clerk, receptionist, and medical record clerk (Tr. 66, 188). The claimant alleges that she has been unable to work since February 23, 2009, due to major depression, bipolar disorder, hypothyroidism, hypersensitive cardiovascular disease, brittle diabetes, a sleep disorder, anxiety, and other (unspecified) psychiatric disorders (Tr. 65, 241).

## Procedural History

On February 29, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 2, 2014 (Tr. 15-27). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work as

defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except that she was limited to frequent handling, fingering, and feeling; occasional use of hand controls, climbing ramps and stairs, and interaction with supervisors and co-workers; and could never climb ladders or scaffolds, crawl, work at unprotected heights or around moving mechanical parts, be exposed to temperature extremes, or interact with the public (Tr. 20). The ALJ further found the claimant required a sit/stand option that allowed a change of position at least every thirty minutes, and was limited to simple tasks and simple work related decisions (Tr. 20). Due to episodic symptomology, the ALJ also found the claimant may miss one day per month (Tr. 20). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the regional and national economies, *e. g.*, small products assembler, electrical assembler, and conveyor line bakery worker (Tr. 25-27).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) account for her mental impairments, and (ii) assess her credibility. The Court finds these contentions persuasive, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ determined that the claimant had the severe impairments of bipolar disorder, history of polysubstance abuse, diabetes mellitus, obesity, hypertension, sleep apnea, anxiety disorder, history of carpal tunnel with corrective surgery, personality disorder, and thyroid disorder (Tr. 18). The medical record reveals the claimant was admitted to Laureate Psychiatric Clinic and Hospital for psychiatric stabilization on May

-4-

1, 2008, after reporting increased irritability, a depressed mood, lethargy, fatigue, and a general decrease in her level of functioning (Tr. 260-69). She was discharged on May 5, 2008, and was diagnosed with major depressive disorder, recurrent, severe; cannabis abuse; amphetamine abuse; hypertension; hypothyroidism; and diabetes (Tr. 269). Dr. Michael Dubriwny noted he was unclear whether the claimant's lethargy was related to her mood disorder or substance abuse, but that her financial distress contributed to her symptoms (Tr. 269). Dr. R.T. Bowden managed the claimant's psychotropic medications from August 2011 through May 2012, when he discharged her from his care due to noncompliance (Tr. 854-60, 902). The claimant also participated in counseling with Gayle McDonald from October 2011 through September 2012 (Tr. 657-77). Ms. McDonald regularly noted the claimant had a bright affect and was making good progress as to her treatment plan, however, on November 15, 2011, and again on November 22, 2011, the claimant's progress was moderate, and her affect was depressed and anxious, respectively (Tr.657-77).

The claimant established care with Dr. Nance Weddle on June 24, 2009 (Tr. 732-34). Dr. Weddle regularly managed the claimant's medications for hypertension and diabetes, but her treatment for the claimant's panic disorder and depression was sporadic (Tr. 687-754, 904-43, 956-61). Dr. Weddle occasionally counseled the claimant regarding her depression and periodically prescribed psychotropic medications, but regularly noted upon examination that the claimant was oriented and alert, had an appropriate mood/ affect, and that her insight and judgment were good (Tr. 687-733, 907-30, 957-61). On July 24, 2012, Dr. Weddle noted the claimant's mood/affect was

1, 2008, after reporting increased irritability, a depressed mood, lethargy, fatigue, and a general decrease in her level of functioning (Tr. 260-69). She was discharged on May 5, 2008, and was diagnosed with major depressive disorder, recurrent, severe; cannabis abuse; amphetamine abuse; hypertension; hypothyroidism; and diabetes (Tr. 269). Dr. Michael Dubriwny noted he was unclear whether the claimant's lethargy was related to her mood disorder or substance abuse, but that her financial distress contributed to her symptoms (Tr. 269). Dr. R.T. Bowden managed the claimant's psychotropic medications from August 2011 through May 2012, when he discharged her from his care due to noncompliance (Tr. 854-60, 902). The claimant also participated in counseling with Gayle McDonald from October 2011 through September 2012 (Tr. 657-77). Ms. McDonald regularly noted the claimant had a bright affect and was making good progress as to her treatment plan, however, on November 15, 2011, and again on November 22, 2011, the claimant's progress was moderate, and her affect was depressed and anxious, respectively (Tr.657-77).

The claimant established care with Dr. Nance Weddle on June 24, 2009 (Tr. 732-34). Dr. Weddle regularly managed the claimant's medications for hypertension and diabetes, but her treatment for the claimant's panic disorder and depression was sporadic (Tr. 687-754, 904-43, 956-61). Dr. Weddle occasionally counseled the claimant regarding her depression and periodically prescribed psychotropic medications, but regularly noted upon examination that the claimant was oriented and alert, had an appropriate mood/ affect, and that her insight and judgment were good (Tr. 687-733, 907-30, 957-61). On July 24, 2012, Dr. Weddle noted the claimant's mood/affect was

appropriate, but flat, and that her insight and judgment were reasonably intact (Tr. 923-25). She prescribed an antianxiety medication, and encouraged the claimant to keep looking for a job, opining that "getting busy and active and contributing to the household would be very good for her." (Tr. 924). On February 21, 2012, in response to a request for a narrative report regarding the claimant's ability to work, Dr. Weddle stated she did not have "any reason to think [the claimant] could not hold down a full time job. She is not disabled in my medical opinion." (Tr. 766).

Dr. Kathleen Ward performed a psychological consultative examination on April 10, 2012 (Tr. 862-66). Dr. Ward observed the claimant was sometimes "silly and distracted," appeared younger than her stated age, and had a chatty, rambling demeanor (Tr. 864). She found the claimant had normal thought processes and content, was oriented, and had average intellectual ability, but did have some deficits in social judgment and problem solving (Tr. 864-65). Dr. Ward diagnosed the claimant with bipolar disorder, amphetamine dependence in early remission, and cannabis dependence in early remission, and opined that her long-term prognosis would likely depend on treatment compliance and relapse prevention (Tr. 865).

State reviewing psychologist Dr. Dan M. Cox completed a Psychiatric Review Technique form on May 23, 2012 (Tr. 870-83). Dr. Cox found that the claimant's mental impairments were nonsevere and consisted of bipolar disorder and amphetamine and cannabis dependence in early remission (Tr. 870-79. As a result, Dr. Cox found that the claimant was mildly impaired in the functional categories of activities of daily living,

maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 880).

At the administrative hearing, the claimant testified as to her past work history, her impairments, and her medical treatment (Tr. 33-72). She stated the primary reasons she could not work were her diabetes and cloudy mental status (Tr. 49). As to her mental impairments, she stated she has taken a number of medications and nothing has been effective in treating her confusion and memory loss (Tr. 49-52). She testified her diabetes causes a lack of energy, and negatively impacts her psychological state (Tr. 53-54). She further stated that her medication for depression is effective "to an extent." (Tr. 54). When asked how she got along with people, the claimant indicated she did not do well with crowds, and although she isn't completely uncomfortable with people in a room, she communicates much better on the phone, and that her anxiety increases if she has a lot of things going on at once (Tr. 58). The claimant also testified that it takes a lot of effort for her to maintain attention and concentration, and that she gets exhausted doing so for long periods (Tr. 59).

In his written decision, the ALJ summarized the claimant's testimony, as well as some of the medical evidence. Regarding the claimant's mental impairments, the ALJ discussed Dr. Ward's findings as to the claimant's ability to sustain focus at step three, but did not mention or discuss any of her findings at step four, nor did he assign them any weight (Tr. 19-25). At step four, the ALJ noted that Dr. Bowden managed the claimant's medication for her mental impairments, but he did not mention or discuss the claimant's inpatient mental health treatment in May 2008 (Tr. 24-25). The ALJ devoted the

majority of his step four analysis to his reasons for not finding the claimant credible, including noncompliance and drug use (Tr. 20-25). He then found the claimant not disabled at step five (Tr. 26-27).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ adopted Dr. Ward's findings regarding the presence of the claimant's severe mental impairments (Tr. 18). Additionally, he appeared to adopt Dr. Ward's findings as to the claimant's ability to sustain focus because he referenced such findings in concluding that the claimant was moderately limited in her ability to maintain concentration, persistence, or pace; however, he entirely ignored Dr. Ward's

opinions as to the claimant's social judgment and problem solving ability (Tr. 419, 425). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of her own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). In addition to evaluating Dr. Ward's findings according to the appropriate standards and indicating what weight he was assigning to them, the ALJ should have explained why he found certain aspects of Dr. Ward's findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Additionally, the claimant contends, *inter alia*, that the ALJ erred in analyzing her credibility. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p. *See, e .g., Hardman*, 362 F.3d at 678, *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March

16, 2016, which eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Thus, even if the ALJ's credibility analysis was sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p. Moreover, the ALJ relied heavily on the claimant's failure to follow prescribed treatment for her impairments when discrediting her subjective statements without considering whether the claimant had an acceptable reason for such noncompliance. *See Frey v. Bowen,* 816 F.2d 508, 517 (10th Cir.1987), *citing Weakley v. Heckler,* 795 F.2d 64, 66 (10th Cir.1986), *quoting Teter v. Hecker,* 775 F.2d 1104, 1107 (10th Cir.1985) ("In reviewing the impact of a claimant's failure to undertake treatment on a determination of disability, we consider four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) *whether the refusal was without justifiable excuse*.") [emphasis added]. This analysis, which is entirely absent in the ALJ's opinion, was particularly important here because both the claimant and Dr. Weddle attributed some of her noncompliance to her depression (Tr. 956), and there are numerous references to the claimant's inability to afford treatment (Tr. 261-62, 269, 299, 305, 374, 449, 743, 863). *See, e. g., Thompson v.*

*Sullivan,* 987 F.2d 1482, 1489-90 (10th Cir. 1993) (An inability to pay may justify the failure to follow treatment); *McCleave v. Colvin,* 2013 WL 4840477, at *6 n. 6 (W.D. Okla. Sept. 10, 2013) (Bipolar disorder may justify the failure to follow treatment), citing 20 C.F.R. §§ 404.1530(c), 416.930(c) and *Jelinek v. Astrue,* 662. F.3d 805, 814 (7th Cir. 2011) ("ALJ's assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that noncompliance with medication supports and adverse credibility inference."). Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for evaluation in accordance with the new standard.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**